NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1176

RESTAURANT TECHNOLOGIES, INC.,

Plaintiff-Appellant,

v.

JERSEY SHORE CHICKEN and KLEE'S BAR & GRILL,

Defendants-Appellees.

--------------------------------------------------------------------------

OILMATIC SYSTEMS, LLC,

Plaintiff-Appellee,

v.

RESTAURANT TECHNOLOGIES, INC.,

Defendant-Appellant.


Peter M. Lancaster, Dorsey & Whitney LLP, of Minneapolis, Minnesota, argued for appellant Restaurant Technologies, Inc.  With him on the brief were Ronald J. Brown and Heather D. Redmond.

Sidney David, Lerner David Littenberg Krumholz & Mentlik, LLP, of Westfield, New Jersey, argued for all appellees.  With him on the brief was Scott E. Charney.

Appealed from:  United States District Court for the District of New Jersey

Judge Mary L. Cooper

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1176

RESTAURANT TECHNOLOGIES, INC.,

Plaintiff-Appellant,

v.

JERSEY SHORE CHICKEN and KLEE'S BAR & GRILL,

Defendants-Appellees.

-------------------------------------------------------------------------------------------

OILMATIC SYSTEMS, LLC,

Plaintiff-Appellee,

v.

RESTAURANT TECHNOLOGIES, INC.,

Defendant-Appellant.

Appeal from the United States District Court for the District of New Jersey in Case No. 05-5356, Judge Mary L. Cooper.

_____

DECIDED: January 06, 2010

_____

Before LOURIE, ARCHER, and GAJARSA, Circuit Judges.

LOURIE, Circuit Judge.

Restaurant Technologies, Inc. ("RTI") appeals from the decision of the United States District Court of New Jersey granting summary judgment of noninfringement of certain claims of U.S. Patent 5,249,511 ("the '511 patent"). See Restaurant Technologies, Inc. v. Jersey Shore Chicken, 2007 WL 4081737, 1 (D.N.J. 2007) ("Summary Judgment Opinion"), Restaurant Technologies, Inc. v. Jersey Shore Chicken, 2007 WL 446910, 1 (D.N.J. 2007) ("Claim Construction Opinion"). Because the court correctly construed the claim terms at issue and correctly determined that no reasonable fact finder could conclude that Jersey Shore Chicken, Klee's Bar & Grill, and Oilmatic Systems, LLC (collectively "Appellees") infringed under those constructions, we affirm.

## BACKGROUND

The invention in this case relates to the supply and disposal of cooking oil for use with restaurant fryers. RTI owns the patent in suit, directed to a system for the distribution, filtering, removal, and disposal of cooking oil. See '511 patent col. 1 ll. 7-10. The supply and removal of cooking oil to restaurant fryers presents hazards in the form of hot oil that splashes employees or spreads on kitchen floors. Id. col. 1 ll. 35-40. The need for employees to carry 35-pound containers of oil from storage locations to the fryer, or from the fryer to waste locations, may also present strains on time and muscle. Id. col. 1 ll. 28-30. Cooking oil must be filtered periodically, as it is prone to developing a build-up of carbonized food particles during use. Id. col. 1 ll. 51-53. Prior art to the '511 patent includes a system developed to distribute oil from a holding tank to

a fryer and remove it to a waste tank, <u>see</u> U.S. Patent 4,646,793, in addition to filtering systems that remove oil from a fryer, filter it, and return it to the fryer, <u>see</u> U.S. Patent 4,975,206. The specification of the '511 patent distinguishes the claimed invention as a system that handles the oil initially and at high temperatures, and can filter and dispose of the oil at selected intervals. <u>See</u> '511 patent col. 2 ll. 50-59.

The '511 patent describes a system with a filter station, a waste station, a supply station, a pump, a fryer station, and a control panel, all interconnected by piping. <u>See</u> '511 patent col. 4 ll. 43-46. A valve controller, which "may be either a manually or electrically operated controller" controls operation of valves in the piping so that a pipe path between stations can be selected. <u>Id.</u> col. 3 ll. 48-52. The specification describes how, using one selected pipe pathway, oil can be transferred from the supply station to the fryer by opening specified valves, and delivered to the fryer through a "squeezable nozzle valve." <u>Id.</u> col. 5 ln. 20. From the fryer, used oil may be moved to the filter and passed through it a number of times, so as to be usable for cooking again. If the oil is "too dark to further use in cooking," it may be pumped to the waste tank from either the filter station or the fryer station. <u>See</u> '511 patent col. 9-10 ll 49 -10.

On appeal, independent claims 1 and 8 are the only claims at issue. Claim 1 reads as follows:

> 1. A bulk cooking oil system having various stations connected by piping for movement of oil along preselected pipe paths comprising:
>
> (a) a filter station including
>      (i) means for filtering cooking oil from said fryer station and
>      (ii) filter valve means for opening and closing pipe lines leading to and away from said filter station;
>
> (b) a waste station including
>      (i) means for storing used oil and

(ii) waste valve means for opening and closing a pipe line leading to and away from said waste station;

(c) a supply station including
(i) means for storing oil to be used at said fryer station for cooking food products and
(ii) supply valve means for opening and closing a pipe line leading to and away from said supply station;

(d) a fryer station including
(i) a fryer for receiving and heating cooking oil to cook food products,
(ii) fryer valve means for opening and closing a pipe line leading to and from said fryer station, and
(iii) <u>means for metering oil to said fryer in predetermined amounts</u>;

(e) <u>control means for selectively operating said filtering, waste supply and fryer valve means and for selecting a pipe path between a predetermined pair of said stations</u>;

(f) pump means for moving oil along said selected pipe path.

'511 patent col. 10 l. 55-col. 11 l. 20 (emphasis added).

Claim 8 reads as follows:

8. Apparatus for the distribution and recycling of cooking oil comprising:

(a) a first container for receiving and storing cooking oil;

(b) a second container adapted to receive and store waste cooking oil;

(c) a filter unit for housing a filter used to filter particles in used cooking oil;

(d) first and second coupling attachments adapted respectively to be coupled to lines leading to a fryer and to egress from said apparatus;

(e) <u>piping network interconnecting said first and second containers, said filter unit and said first and second couplings</u>;

(f) pipe path control means for determining a pipe path within said piping between a pair selected from among said first and second containers, said filter unit and said first and second coupling attachments; and

(g) pump means for circulating cooking oil along said selected path.

'511 patent col. 11 l. 49-col. 12 l.18 (emphasis added).

The accused Oilmatic system, made by Oilmatic systems, LLC ("Oilmatic") and used by the two restaurants named as defendants in this action, is also designed to supply oil to a fryer from a supply tank and remove waste oil to a waste tank.[1] The system has pipes connecting each of the supply tank and the waste tank to separate couplings on the exterior of the building. The supply tank has piping leading to a dipstick and ends in a supply nozzle on the dipstick. There is also a waste nozzle on the dipstick, connected with piping to the waste oil tank. The supply line has a fresh oil pump and the waste line has a waste oil pump. The dipstick has a three-position selector switch with the positions of "Fill," "Off," and "Drain," as well as a "pump start" button. To fill the fryer with fresh oil, the selector switch is moved to "Fill," and the "pump start" button is pushed, causing the fresh oil pump to create oil pressure in the supply line; once the oil pressure reaches a threshold level, it will trigger a spring-loaded check valve and the end of the supply nozzle, causing fresh oil to flow. To drain the fryer, the operator moves the selector switch to "Drain," and pushes the "pump start" button, causing the waste oil pump to withdraw the used oil from the fryer through the waste nozzle and waste line. The fryer used with the Oilmatic system may have a built-in filter or be used with a portable filter, although Oilmatic stipulated that it would not base any noninfringement arguments on the absence of a filter.

---

[1] The Oilmatic system is used in conjunction with a restaurant's fryer and a filter.

In November 2005, RTI filed separate actions for patent infringement against the restaurants Jersey Shore Chicken and Klee's Bar & Grill. The restaurants both used an oil-supply and removal system made by Oilmatic. Oilmatic then filed a declaratory judgment suit against RTI, asserting, inter alia, noninfringement and invalidity of the '511 patent. The three cases were consolidated, after which RTI filed a counterclaim of infringement against Oilmatic.

In February 2007, the district court issued a Markman decision, construing relevant claim terms in the '511 patent. Claim Construction Opinion, 2007 WL 446910. First, the court looked at the contested means-plus-function elements of claim 1. The court determined that the term "means for metering oil to said fryer in predetermined amounts" of claim 1, paragraph (d)(iii), had the function of "supplying oil in a regulated or measured amount," and a corresponding structure of "a manually or electronically operated trigger valve . . ." with a squeezable nozzle. Id at *11-12. The court further found that the "control means" of claim 1, paragraph (e), had the functions of "(1) selectively operating the filtering, waste, supply, and fryer valve means, and (2) selecting a pipe path between a predetermined pair of stations," and corresponding structures of "a manual system of push-pull knobs, or a partially or completely automated system comprised of microprocessor controls." Id. at *13-14. The court found that the piping network of claim 8 could be given its ordinary meaning. Id. at *17.

Following claim construction, the district court granted summary judgment of non-infringement of independent claims 1 and 8, holding there was no issue of material fact as to infringement. In making its determination, the court explained that the Oilmatic system supplies oil in a regulated amount when the operator "turns the switch located

on the dipstick to 'fill' and depresses the push start button, activating the fresh oil pump and causing oil to flow through the dipstick nozzle," and that the operator can release the push-start button to cease the flow of oil. Summary Judgment Opinion, 2007 WL 4081737 at *15-16. The court therefore concluded that the accused structure of the dipstick and fresh oil pump had the identical function to claim 1, paragraph (d)(iii) (viz., "supplying oil in a regulated or measured amount"). Id. However, the court found that the accused device did not have the same or an equivalent structure to a squeezable trigger valve with a nozzle. Id. at *16. According to the court, neither the switch nor the push start button on the dipstick assembly is a valve. Id. Nor is either the switch or the push start button the equivalent of a squeezable valve; even if moving the switch or pushing the button was equivalent to squeezing, nothing in the assembly is equivalent to a valve. Id. The Oilmatic system's pump (which Oilmatic conceded was a valve for purposes of the motion) is not squeezed when the operator presses the start button, and thus it is also not a squeezable valve. Rather, the pump is a positive displacement gear pump with an input shaft rotated in a single direction to increase fluid pressure in the supply line which overcomes a spring-loaded check valve. Id. This input shaft rotation, rather than squeezing, creates pressure to move the oil, and those methods, according to the court, are not equivalent. Id.

Oilmatic did not dispute that the three-position switch on the dipstick of the accused machine performed both of the functions of claim 1, paragraph (e). The court held, however, that the dipstick switch was not substantially similar to the disclosed structures of the patent. Summary Judgment Opinion, 2007 WL 4081737 at *13. The dipstick operates by activating one of two pumps, which the court found to be a

2009-1176                                    7

substantially different manner of operation than the '511 patent's disclosed structure of push-pull knobs mechanically linked to valves. Id. Nor did the accused machine have identical structure to microprocessor controls or their equivalents, as it was not completely or partially automated. Id. at *12.

The district court found that the Oilmatic system lacked claim 8, paragraph (e)'s, "piping network interconnecting said first and second containers, said filter unit and said first and second couplings." The court found that no reasonable juror could find infringement of claim 8 because the accused system's pipes did not interconnect, but rather consisted of two separate pathways leading to and from the fryer, and a filter which only connected with the fryer. This, the court concluded, would not be within an acceptable range of equivalents, as it would require reading out the "interconnecting" limitation.

Because the court found that claims 1 and 8 were not infringed as a matter of law, it granted Oilmatic's motion for summary judgment. RTI timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

We review claim construction de novo on appeal. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc). Our claim construction analysis begins with considering the language of the claims themselves. See Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc). However, "claims must be read in view of the specification, of which they are a part." Id. at 1315 (quotation marks omitted). In addition, courts may "rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or

ascertained by a reading of the patent documents." Id. at 1322–23 (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1584 n.6 (Fed. Cir. 1996)).

Claim terms in the means-plus-function format are construed in a two-step process. Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1322 (Fed. Cir. 2003). First, the court identifies the claimed function based on the claim language and limitations. Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 296 F.3d 1106, 1113 (Fed. Cir. 2002). Second, the court ascertains the corresponding structures disclosed in the specification for performing that function. Omega Eng'g, 334 F.3d at 1322. The claim "shall be construed to cover the corresponding structure . . . described in the specification and equivalents thereof." 35 U.S.C. § 112 ¶ 6.

In order to establish infringement of a means-plus-function term, a patentee must show that "the relevant structure in the accused device perform[s] the identical function recited in the claim and [is] identical or equivalent to the corresponding structure in the specification." Odetics, Inc. v. Storage Technology Corp., 185 F.3d 1259, 1267 (Fed. Cir. 1999) (citations omitted). Two of the contested claim limitations, claim 1, paragraphs (d)(iii) and (e), are in means-plus-function format; the contested limitation of claim 8 is not. We turn first to the limitations of claim 1 at issue.

A.    Claim 1

1.    Means for metering oil

The parties do not contest that claim 1, paragraph (d)(iii), "means for metering oil" has the function of "supplying oil in a regulated or measured amount." Rather, RTI argues that the "means for metering" should be construed to include as equivalent structure any nozzle valve. In support of its argument, RTI cites expert testimony that

any trigger mechanism would be equivalent to the squeezable trigger valve, whether lever, button, or some other structure, including either the pump or the dipstick with a triggering button of the accused product. RTI proposes that Oilmatic's dipstick assembly is identical to a manually or electronically operated trigger valve, and that, in the alternative, the dipstick assembly, coupled with a pump, is an equivalent to the relevant disclosed structure.

Appellees respond that the court properly construed claim 1, paragraph (d)(iii), to claim a corresponding structure of a squeezable trigger valve based on the descriptions in the specification, rather than solely relying on expert testimony. Appellees also argue that the district court was correct in finding that a "positive displacement gear pump with . . . an input shaft rotated in a single direction," so that rotation, not squeezing, performs the function of metering oil to the fryer is not an equivalent structure. Appellees further argue that the court correctly excluded as an equivalent the trigger mechanism on the dipstick because it is not a valve.

We agree with the district court and the parties as to the claimed function, which is "supplying oil in a regulated or measured amount." Claim Construction Opinion, 2007 WL 446910 at *11 (citing Merriam-Webster Dictionary (2005)). We further agree with the court that the disclosed structure corresponding to the function of claim 1's paragraph (d)(iii) is a squeezable trigger valve with a nozzle and its equivalents. The specification states:

> Fryer station 20 comprises a pair of valves 46 and 48 positioned in pipe lines intersecting with a coupling 49 attached to one end of flexible line 50. The other end of flexible line 50 contains squeezable nozzle valve 52... The function of the fryer station 20 is to allow the proper metering of fresh or recycled filtered oil into the fryer vat.

'511 patent, col. 5 ll. 17-21; see also id. at col. 5 ll. 55-62 ("[a]n operator [] places trigger valve 52 having a nozzle 52a into a selected fryer vat and squeezes trigger valve 52 into an open position. Cooking oil follows the selected pipe path extending . . . through . . . open trigger valve 52 into vat 44"). Although any trigger mechanism, such as a lever or button might perform the claimed function, the structure recited repeatedly and consistently in the specification in relation to the function is a squeezable trigger valve. We note that, consistent with the specification, the squeezable trigger valve may be completely or partially automated. Id. at col. 10 ll. 46-49.

We further agree with the district court's finding that no reasonable fact finder could conclude that the accused structure is identical or equivalent to the relevant disclosed structure. First, the dipstick assembly does not perform the identical function to a squeezable trigger valve, because it does not regulate the flow of oil when the button is depressed. Thus, the dipstick assembly alone does not satisfy claim 1's paragraph (d)(iii). Secondly, although the dipstick assembly, in conjunction with the pump, may perform the identical function as the squeezable trigger valve, the differences between the dipstick assembly plus a pump on the one hand, and a squeezable trigger valve with a nozzle, on the other, are not insubstantial. For example, the dipstick assembly and pump are activated with a push button on the dipstick assembly that energizes the pump; fluid pressure in the line then overcomes a spring-loaded check valve to pour into the fryer. The accused system thus uses a pump and fluid pressure to overcome a check valve, whereas the patent claims a valve that is squeezed. Thus, no reasonable fact finder could have found that the dipstick assembly, alone or in conjunction with the pump, meets the limitations of claim 1, paragraph (d)(iii).

## 2. Control Means

RTI next argues that the district court improperly construed the corresponding structure of the claim 1, paragraph (e), "control means for selectively operating said filtering, waste supply and fryer valve means and for selecting a pipe path between a predetermined pair of said stations." According to RTI, the specification indicated that push pull knobs and microprocessors were two ends of a spectrum of claimed structures that perform the claimed function, and that the court improperly allowed only those embodiments at either end of the spectrum. RTI argues that the claim term should encompass any manual or electrical system that performs the claimed function, including the dipstick assembly of the accused product or push-pull knobs on the fryers and filters that Oilmatic stipulated were part of its system.

Appellees respond that the court properly found that the disclosed corresponding structures were either manual (a series of push-pull knobs) or electrical (a partially or completely automated system comprised of microprocessor controls that moved an operating rod that slides back and forth to open and close a valve). Appellees argue that there is no "continuum of corresponding structures," and the court properly found that Oilmatic's three-position selector switch and push button that activated a pump were not equivalent to either push-pull knobs or microprocessor controls. Appellees further argue that the push-pull knobs on the fryers and filters operated with its system do not perform the claimed function of claim 1, paragraph (e), because they do not control operation of the waste or supply lines.

We agree with the district court that claim 1, paragraph (e), includes the two functions of "(1) selectively operating the filtering, waste, supply, and fryer valve means,

and (2) selecting a pipe path between a predetermined pair of stations." Claim Construction Opinion, 2007 WL 446910 at *12. We further agree that the specification discloses corresponding structures of a series of push-pull knobs and of a partially or completely automated system of microprocessor controls. See '511 patent, col. 8 ll. 10-16 (describing manual push-pull knob operation), and col. 6 ll. 46-53 (describing the use of microprocessor controls for opening and closing valves). Section 112, paragraph 6, only allows the patentee to claim structure that is disclosed in the specification. Linear Technology Corp. v. Impala Linear Corp., 379 F.3d 1311, 1322 (Fed. Cir. 2004). Thus, there is no spectrum of undisclosed structures covered by the '511 patent. Rather, the patent covers only those structures that are disclosed and their equivalents.

The parties agreed that the dipstick assembly performed the claimed function, so we will not address that conclusion. However, the structure of the dipstick assembly is neither identical nor equivalent to the claimed structure in the '511 patent. Though the dipstick's switch and button may be an acceptable alternative structure to the push-pull knob system disclosed in the patent, it is not an equivalent. The push start button of the dipstick, as described above, is an electrical switch that activates either a fresh oil (fill) pump or waste oil (drain) pump, depending on the position of the three-position selector switch on the dipstick. The push-pull knobs described in the specification, on the other hand, are manually operated by pulling the knobs to open the individual valves to which they are connected, and pushing the valves shut when the knobs are pushed into contact with the valve panel. '511 patent, col. 8 ll. 10-16. Because the dipstick operates in a substantially different way, it is not an equivalent of the push-pull knobs. We further agree with Oilmatic that, because the push-pull knobs on the fryers and filters used in

conjunction with their system cannot control oil from the supply line or to the waste line, they do not perform the claimed function.

B.    Claim 8

RTI next argues that the district court improperly construed the limitation of claim 8, paragraph (e), "piping system interconnecting said first and second containers, said filter unit and said first and second couplings." '511 patents, col. 12 ll. 7-10.  According to RTI, the claim term "interconnecting" does not require that each and every element be directly connected to each other.  Further, RTI argues that use of the term "comprising" in the preamble of claim 8 permits other elements—such as the fryer—to be part of the network connected by piping.  The fact that the oil in the accused system travels through air when entering the fryer is not determinative of noninfringement, according to RTI, because the patent discloses a structure in which the oil must travel through air in Figure 1, and this interpretation was reinforced by the expert testimony. Thus, the accused system infringes because all of the elements are connected to each other, albeit through the fryer, and form the pipe paths described in the specification.

Appellees, however, argue that the court properly found that although the accused structure had the five elements listed in claim 8, they were not interconnected, because the fill pipeline (including the first coupling and first container) were not connected to the components of the drain pipeline (including the second container and second coupling), and because the filter was not connected by a pipeline to the other specified components, but, rather, was connected only to the fryer.

We agree with the district court that the term "piping network interconnecting [the five elements]" means piping that connects the elements to one another. Summary

Judgment Opinion, 2007 WL 4081737 at *19. This is consistent with the specification, which explains that "[t]he stations are interconnected by piping ... capable of carrying the required flow of cooking oil between selected stations for the various purposes as described below." '511 patent, col. 4 ll. 46-49. The purposes described in the patent include the selection of various pipe paths, including, inter alia, a path from one coupling attachment to the supply tank, id. col. 5 ll. 47-54, the supply tank to the fryer, id. col. 5 ll. 59-62, the fryer to the filter, id. col. 6 ll. 8-10, and from either the filter or the fryer to the waste tank, id. col. 6 ll. 32-34. The specification thus describes how pipe paths among any selected elements may be selected. Figures 1 and 2 of the '511 patent, which indicate that all the elements are connected, but that different pipe paths may be selected by the operation of various valves, are also consistent with this reading of the claim language.

Because the accused machine does not contain a network interconnecting its various elements, it does not literally infringe the limitation of claim 8, paragraph (e). In particular, the Oilmatic system has one pipeline running from the supply tank to the fryer, one line running from the fryer to the waste station, and a separately housed filter, which connects only to the fryer. Even if the fryer connects these elements, there is no interconnection. Rather, there is one pipe path in the supply direction and one in the waste direction. Furthermore, the court was correct in limiting possible equivalents as a matter of law, finding that claim 8, paragraph (e), "warrant[s] few or no equivalents because there are no insubstantial or trivial changes that could be made to this limitation; the specified components are either connected or not connected to one another by a piping network." Summary Judgment Opinion, 2007 WL 4081737 at *19.

2009-1176                                        15

Based on the claim construction, the court was correct in finding that Oilmatic was entitled to summary judgment of noninfringement.

## CONCLUSION

For the reasons stated above, the district court was correct in granting summary judgment of noninfringement. Accordingly, we <u>affirm</u>.

<u>AFFIRMED</u>